# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

GLENN C. WOODMAN,

    Plaintiff,

vs.

R AND L CARRIERS, INC. and
JOSEPH K. RAYFIELD,

    Defendants.

No. 09-CV-62-LRR

**ORDER**

## I. INTRODUCTION

The matters before the court are: (1) the Motion in Limine filed by Defendants R and L Carriers, Inc., a/k/a R and L Transfer, Inc. and Joseph Rayfield ("Defendants' Motion") (docket no. 19); and (2) Plaintiff Glenn C. Woodman's Motion in Limine ("Plaintiff's Motion") (docket no. 21). The court refers to Defendants' Motion and Plaintiff's Motion together as the "Motions."

## II. RELEVANT PROCEDURAL BACKGROUND

On April 29, 2010, Defendants filed Defendants' Motion. On May 3, 2010, Plaintiff filed Plaintiff's Motion. On May 4, 2010, Plaintiff filed a Resistance to Defendants' Motion ("Plaintiff's Resistance") (docket no. 22). On May 7, 2010, Defendants filed a Resistance to Plaintiff's Motion ("Defendants' Resistance") (docket no. 26). On May 13, 2010, the court held a Final Pretrial Conference ("Hearing"). At the Hearing, the court heard oral argument on the Motions. The court reserved ruling on the Motions pending the instant Order.

## III. ANALYSIS

The court analyzes the Motions in turn.

### A. Defendants' Motion

#### 1. Dr. Schmidt's medical opinion about Plaintiff's future medical care

Defendants argue that the court should bar Dr. Schmidt from testifying about Plaintiff's need for surgery for carpal tunnel syndrome in his left arm. Dr. Schmidt is Plaintiff's treating physician. On April 7, 2010, Dr. Schmidt diagnosed Plaintiff with carpal tunnel syndrome and recommended a course of treatment, which included surgery. On April 19, 2010, two days before his deposition, Dr. Schmidt issued a new medical report that "indicated [P]laintiff was having some continued numbness in his left hand that further surgery contemplated." Brief in Support of Defendants' Motion (docket no. 19-1), at 3. On May 7, 2010, discovery closed.

Defendants argue that this was the first they had heard about any surgery, despite having previously asked Plaintiff whether he had been advised about future care expenses, disability or health care. Defendants argue that Dr. Schmidt should be treated as an expert witness and be subjected to expert discovery rules. Defendants argue that Plaintiff did not supplement his discovery in a timely manner to include this information. Defendants claim that this late disclosure is prejudicial to their case.

Generally, treating physicians are not required to provide expert reports. *See* Fed. R. Civ. P. 26 advisory committee's notes to the 1993 amendments ("[T]his rule [. . .] continue[s] to use the term 'expert' to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, or other specialized matters. The requirement of a written report [. . .] applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report"). However, if a treating physician's opinion crosses over the line to causation or prognosis, the treating physician becomes an expert under Rule

2

26(a)(2)(B) and must meet the requirements of Federal Rule of Evidence 702. *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000).

Defendants have not shown that Dr. Schmidt's recommended course of treatment crosses the line from a treating source's recommendation to an expert opinion. Rather, the evidence shows that, in the course of his treatment of Plaintiff, Dr. Schmidt recommended a certain treatment for Plaintiff's carpal tunnel syndrome. A treating physician's recommended course of treatment for a diagnosed condition does not relate to either causation or prognosis. Accordingly, the court concludes that Dr. Schmidt need not be treated as a retained expert.

Next, the court turns to consider Defendants' argument that they would be prejudiced by Dr. Schmidt's recommendation of surgery for carpal tunnel syndrome. At the Hearing, Defendants' counsel stated that he only sought to bar the recommendation of surgery—not evidence that Plaintiff was experiencing numbness in his left arm. The court finds that Defendants had ample opportunity to retain an expert to opine on Plaintiff's issues with his left arm, which was eventually diagnosed as carpal tunnel syndrome. As early as August of 2007, Plaintiff's medical records referred to numbness and tingling in his left arm. *See, e.g.*, Def. Ex. B (docket no. 19-3) (stating that, in August of 2007, Plaintiff sought "neurology review for numbness and tingling in his left hand, which he states he did not have prior to his motor vehicle accident"). In light of these medical records, Defendants were put on notice that they could obtain a medical expert to testify about treatment for Plaintiff's numbness and tingling. However, Defendants chose to retain Dr. Kary R. Schulte, M.D., a general orthopedist, who Defendants argue is unable to comment on treatment of carpal tunnel surgery because it is not part of his specialty. The court finds that Defendants were not unfairly prejudiced by the disclosure of Plaintiff's need for carpal tunnel surgery. Defendants easily could have designated an expert who could have testified about this issue.

The court also finds that, subsequent to Dr. Schmidt's supplemented treatment plan, Defendants had nineteen days before discovery closed to ask for permission to designate a new expert to testify about carpal tunnel surgery. Instead of trying to find a way to rebut the evidence, Defendants did nothing. This is not unfair prejudice. Accordingly, the court **DENIES** Defendants' Motion to the extent it asks the court to bar evidence of Dr. Schmidt's recommendation of surgery for carpal tunnel syndrome.

### 2. *Plaintiff's financial condition*

Next, Defendants move pursuant to Federal Rules of Evidence 401, 402 and 403 to bar evidence about Plaintiff's financial condition. Defendants take issue with Dr. Schmidt's observation that Plaintiff declined to pursue certain treatments to avoid large medical bills. At trial, Defendants intend to argue that Plaintiff's medical records indicate that his condition had resolved itself several years ago. Plaintiff claims that he declined certain treatments for financial reasons. Plaintiff's explanation for his decision to decline certain types of treatment is relevant evidence, because it may explain gaps in Plaintiff's treatment. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The court finds that the probative value of Plaintiff's explanation for his decision to forego certain treatment is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Accordingly, the court **DENIES** Defendants' Motion to the extent it asks the court to bar evidence of Plaintiff's financial condition.

### 3. *Evidence of Plaintiff's lost earnings*

Plaintiff does not resist Defendants' request to bar evidence of Plaintiff's lost earnings. Accordingly, this portion of the Motion is **GRANTED** as unresisted.

4

### *4.  Defendants' other litigation, claims, settlements and affiliated entities*

Plaintiff does not resist Defendants' request to bar evidence of other litigation, claims and settlements, including those of their parents, subsidiaries or affiliates. Accordingly, this portion of Defendants' Motion is **GRANTED** as unresisted. However, during voir dire, the court shall permit the parties to refer to this information to the extent it is relevant to determine whether the potential jurors have any connection to or knowledge of Defendants or their related entities.

### *5.  Reference to witnesses that have not been called to testify as witnesses*

Defendants ask the court to bar Plaintiff from referring to witnesses that were available to testify but which have not been called to testify as witnesses. Because the court has insufficient evidence to determine whether this portion of Defendants' Motion should be granted, the court **RESERVES** ruling on this portion of the Motion until trial.

### *6.  Size and financial condition of Defendants, Defendants' law firm and Defendants' resources*

Plaintiff does not resist Defendants' request to bar Plaintiff from referring to the size of Defendants' law firm and its resources. Accordingly, this portion of Defendants' Motion is **GRANTED** as unresisted. However, the court shall permit voir dire on these matters to the extent it is necessary to determine any relationship a potential juror may have with Defendants or their related entities.

### B. Plaintiff's Motion

### *1.  Defendant Rayfield's injuries*

Plaintiff asks the court to bar evidence of Defendant Rayfield's injuries as well as testimony from Defendant Rayfield about Plaintiff's injuries. In light of the fact that the parties have stipulated to liability, the court finds that this evidence is not relevant to the issue of Plaintiff's damages. Fed. R. Evid. 401. Therefore, this evidence is inadmissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Accordingly, the court **GRANTS** this portion of Plaintiff's Motion. However, if Defendants find that trial

5

evidence warrants the court's reconsideration of this issue, Defendants may notify the undersigned and ask for reconsideration of this issue at trial.

### 2. *Plaintiff's workers' compensation claim*

Plaintiff argues that evidence about his workers' compensation claims are irrelevant and should be barred from evidence. In 1998, Plaintiff filed a workers' compensation claim for a back injury and continued to receive treatment for it until 2009. The parties agree that evidence of Plaintiff's prior injury is relevant to the outcome of the instant action. It is unclear whether Defendants intend to offer evidence of Plaintiff's workers' compensation claim for his 1998 injury. The court **RESERVES** ruling on this issue until trial. The court shall permit the parties to discuss Plaintiff's prior injuries, but if either party wishes to introduce evidence of Plaintiff's workers' compensation claim, that party must first obtain permission to do so from the undersigned at sidebar.

### 3. *Unpaid child support*

Initially, Plaintiff asked the court to bar evidence of his unpaid child support obligations at trial as "irrelevant and unfairly prejudicial." Plaintiff's Motion at ¶ 3. Since filing Plaintiff's Motion, Plaintiff has withdrawn this request. Accordingly, this portion of Plaintiff's Motion is **DENIED** as moot.

### 4. *Failure to report taxable income*

Plaintiff asks the court to bar evidence related to any alleged failure by him to report taxable income as unfairly prejudicial pursuant to Federal Rule of Evidence 403. Defendants argue that this evidence is relevant to any claim for income and lost wages, as well as his character for truthfulness. Plaintiff has abandoned his claim for lost income, so any relevance to his taxes is moot. The court finds that this evidence is irrelevant and inadmissible. Fed. R. Evid. 401 & 402. Additionally, the court finds that, even if they were relevant, their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay. Fed. R. Evid. 403. Accordingly, the court

**GRANTS** Plaintiff's Motion to the extent it seeks to bar this evidence. However, in the event Defendants find that evidence presented at trial warrants the court's reconsideration of this issue, Defendants may ask the court to do so at sidebar.

### 5. *Plaintiff's interrogatory response*

Plaintiff argues that the court should bar Plaintiff's response to an interrogatory about his estimate of damages. At the Hearing, Defendants withdrew their objection to this argument. Accordingly, the court **GRANTS** the Motion to the extent it seeks to bar evidence of Plaintiff's response to this interrogatory.

### 6. *Plaintiff's contingency contract with his attorneys*

Defendants do not resist Plaintiff's argument that the court should bar evidence of his contingency contract or other payment relationship with his attorneys. Accordingly, this portion of Plaintiff's Motion is **GRANTED**.

### 7. *Use of Plaintiff's Complaint as an admission*

Plaintiff argues that Defendants are prohibited from using the allegations in his Complaint (docket no. 1) as an admission. The parties cite Iowa case law in support of their respective positions; however, federal procedure and evidence governs the instant action, so these cases are inapplicable. The allegations in the Complaint do not constitute evidence. *See United States v. Aguirre*, 245 F. App'x 801, 802-03 (10th Cir. 2007) ("Factual allegations in unverified pleadings are not 'evidence' to be considered in a factual inquiry.") (citing *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005); *Jupiter v. Ashcroft*, 396 F.3d 487, 491 (1st Cir. 2005)). The Complaint is unverified. The court finds that the Complaint is not evidence, but merely allegations. Accordingly, the court **GRANTS** Plaintiff's Motion to the extent it asks to bar use of the Complaint as evidence.

### 8. *Annuity contracts or "money tree" arguments and future value*

Plaintiff asks the court to bar evidence or argument about "annuity contracts and/or

how much could be earned with a sum of money if it were invested at the present time," the "money tree" argument, as well as "references to the future value of any damage awards" until appropriate evidence is introduced. Plaintiff's Motion at ¶ 8. Plaintiff argues that whether a jury "awards so much money and it were currently invested at a given percentage that it will earn so much money per year in perpetuity" is irrelevant, and what the jury should determine are "losses suffered reduced to present value." *Id.*

Defendants argue that *Buhmeyer v. Case New Holland, Inc.*, No. 3:04-CV-90095, 2006 WL 1722333 (June 22, 2006 S.D. Iowa 2006) (Pratt, C.J.) supports their position. However, the court in *Buhmeyer* merely reserved ruling on this issue—it did not find for or against the party advocating the money tree argument. Indeed, a close reading of *Buhmeyer* suggests that the money tree argument is inappropriate, because it noted that money tree arguments, if "used by Defendants in an attempt to improperly influence the jury on the question of damages, would be inadmissible because they are irrelevant and prejudicial." *Id.* at *6. *Buhmeyer* reserved ruling on the issue because it believed that an instruction on present value was possible.

The court finds the *Buhmeyer* approach to be reasonable and hereby **RESERVES** ruling on these issues. Like the court in *Buhmeyer*, the court believes that it is likely that the money tree argument is improper. The argument related to evidence on present value is closely related to the money tree argument. However, rather than rule on the propriety of these arguments at this juncture, the court shall wait until the time of trial to re-evaluate these arguments in light of evidence presented at trial. If Defendants wish to raise these matters at trial before the jury, they must seek permission from the undersigned before proceeding.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED:**

(1) The Motions (docket nos. 19 and 21) are **GRANTED IN PART, DENIED**

> **IN PART AND RESERVED IN PART**; and

(2) The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.

**IT IS SO ORDERED.**

**DATED** this 20th day of May, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA